IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION


MICHAEL L. SHORT,

                Plaintiff,

vs.

                                      CIVIL  ACTION  NO.  3:04-1096

WELLS FARGO BANK MINNESOTA, N.A.,
COUNTRYWIDE HOME LOANS, INC.,
TRI-STATE TITLE, INC., a corporation,
BONNIE SUE FLEMING, and DOUGLAS
M. LEGG,

                Defendants.


MEMORANDUM OPINION AND ORDER


      Pending before the Court is the plaintiff's motion for an award of attorney fees.  For the

reasons set forth herein, the motion is **GRANTED**.


I.
PROCEDURAL HISTORY[1]

      The plaintiff instituted this action on October 8, 2004, naming as defendants Wells Fargo

Bank Minnesota, N.A. (Wells Fargo), Countrywide Home Loans, Inc. (Countrywide), Tri-State

---

      [1]The facts surrounding the plaintiff's claims are not important for the Court's decision
regarding attorneys' fees; therefore, the Court will not include a detailed summary in this Order.
A complete recitation of the facts can be found in the Court's Order on Summary Judgment.  *See
Short v. Wells Fargo Bank Minnesota, N.A.*, 401 F.Supp.2d 549 (S.D.W.Va. 2005).

Title, Inc. (Tri-State), Bonnie Sue Fleming (Fleming), and Douglas M. Legg (Legg).  In his

Amended Complaint, the plaintiff alleged the following:

| Count I | Truth in Lending Act (TILA) (15 U.S.C. §§ 1632(a) and 1638(a))violations against both Wells Fargo and Countrywide; and Regulation Z (12 C.F.R. §§ 226.18(k) and 226.17(a)) violations against both Wells Fargo and Countrywide; |
|---|---|
| Count II | Unconscionable Contract in violation of the West Virgina Consumer Credit and Protection Act (WVCCPA), W.Va. Code § 46A-2-121 against Wells Fargo, Countrywide, Tri-State, Fleming and Legg; |
| Count III | Breach of the Duty of Good Faith and Fair Dealing against Countrywide; |
| Count IV | Unauthorized Charges in violation W.Va. Code § 46A-2-115-128(c) against Countrywide; |
| Count V | Failure to Provide Statements of Account in violation of W.Va. Code §46A-2-114(2) against Countrywide; |
| Count VI | Unauthorized Practice of Law against Tri-State and Legg; |
| Count VII | Professional Malpractice against Fleming; and |
| Count VIII | Joint Venture, Conspiracy, and Agency against Wells Fargo, Countrywide, Tri-State, Fleming and Mr.Legg. |

After the Court denied two motions to dismiss filed by Tri-State, Fleming, and Legg (the Tri-State

Defendants) and granted in part and denied in part two separate motions for summary judgment filed

by the Tri-State Defendants and Wells Fargo and Countrywide, the parties engaged in mediation

with Magistrate Judge Stanley.[2]  The parties reached a settlement on December 22, 2005, following

---

[2]At the time of settlement the following claims remained:
Count I claims against Wells Fargo
Count II claims against Wells Fargo, Tri-State, Fleming, and Legg
Count III claims against Countrywide
Count IV claims against Countrywide

(continued...)

-2-

two long days of negotiations.  During the course of mediation, the parties could not reach an agreement as to the plaintiff's attorneys' fees and costs and, instead of going to trial, they agreed to settle the underlying claims and resolve the issue of fees at a later date.

Following the settlement of the underlying claims, the plaintiff filed the present motion for an award of fees and costs.  Though the parties had agreed to mediate the issue of fees and costs after the initial settlement, the parties could not reach an agreement regarding what was left to be resolved.  Wells Fargo and Countrywide contend that all of the defendants agreed that they would evenly split the payment of the fees and mediate or litigate only the amount of fees to be awarded.  The Tri-State Defendants maintain that they simply agreed to mediate or litigate the issue of attorney fees and never agreed to pay a portion of the fees.  In fact, the Tri-State Defendants argue that they should not be responsible for any the award because they cannot be held liable under the WVCCPA.  The defendants do not dispute that the plaintiff is entitled to an award of fees and costs, therefore, the Court will determine the amount of the award before considering which defendants are responsible for the payment of the fees and for what percentage of the award they are responsible.

**III.**
**ATTORNEY FEES**

**A.**     **Calculation of the Fee Award**

In calculating the amount of a fee award, a court usually "multiplies the number of reasonable hours expended times a reasonable rate," this is known as the "lodestar."  *Brodziak v.*

---

(...continued)
>           Count V claims against Countrywide
>           Count VII claims against Fleming
>           Count VIII claims against Wells Fargo and Countrywide

*Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986)).  The party seeking a fee award  must submit evidence in support of the hours expended and the rate requested.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Additionally, in determining the reasonable rate and hours, a district court should look to:

> (1) the time and labor expended; (2) the novelty and difficulty of the question raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fee awards in similar cases.

*Brodziak*, 145 F.3d at 196 (quoting *EEOC v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990)).

However, "the most critical factor" in determining the amount of a fee award is the degree of success obtained.  *Hensley v. Eckerhart*, 461 U.S. at 436.  This factor is particularly important were a plaintiff, as in this case, has succeeded on some of his claims and not on others.  *Id.* at 434.  The United States Supreme Court instructs:

> In this situation two questions must be addressed.  First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id*.  In answering these questions, the Supreme Court explained that often a plaintiff's "claims for relief will involve a common core of facts or will be based on related legal theories."  *Id.* at 435.  In such cases, counsel's time is spent on the case as a whole and dividing out hours spent on individual claims becomes difficult.  *Id.*  "Such a lawsuit cannot be viewed as a series of discrete

claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation the hours reasonably expended on the litigation."  *Id.*

The plaintiff's claims in the present case were closely related as each count  arose out of the circumstances surrounding the origination and service of the plaintiff's loan.  Because the plaintiff's claims arose out of a common core of facts, it would be too difficult to divide out the hours spent on individual claims.   Rather, the Court will focus on the overall relief obtained.  While some of the plaintiff's claims were dismissed by the Court at the dispositive motion stage of the litigation, at the time of settlement all but one of the claims contained in the plaintiff's eight count complaint remained viable as to some defendants.  Therefore, the plaintiff prevailed, to some extent, on all but one of his claims.  The plaintiff's settlement included the voiding of the loan, $34,500 in cash to the plaintiff and an agreement to pay reasonable attorneys' fees, costs, and expenses.  The Court finds these results to be significant.

The Court must now determine whether the results obtained make the number of hours expended reasonable.  In making that assessment, the Court has reviewed the time sheet submitted by the plaintiff's attorneys as evidence of the time expended in this matter.  Wells Fargo and Countrywide have made five specific objections regarding the  hours expended.  In their first objection Wells Fargo and Countrywide argue that there is a duplicative entry by Mr. Hedges for 9.10 hours on August 12, 2005.  The plaintiff has admitted that this entry is duplicative and should be removed from the request.  Wells Fargo and Countrywide also object to the hours expended by Mr. Hedges in preparation of a surreply to the motions for summary judgment.  They contend that the surreply was in part because of plainitff's counsel's failure to adequately address the issues in their response.  The plaintiff's surreply responded to issues raised in the defendants' reply and was

considered by the Court in reaching its decision on the defendants' motion for summary judgment. *See Short v. Wells Fargo Bank Minnesota, N.A.*, 401 F.Supp.2d at 555.  As such, the Court is not persuaded by the defendants' argument and will not exclude the hours expended by Mr. Hedges in the preparation of the surreply.  Wells Fargo and Countrywide also object to the time expended by Mr. Hedges in relation to the preparation of the instant motion for fees as well as Mr. Hedges anticipated time for mediation, discussion and finalization of the settlement.  The motion for fees and costs currently before the Court included not only a recitation of the law but also detailed evidence in support of their request.  The Court finds that time expended by Mr. Hedges in preparation of the motion for fees was reasonable; however, Mr. Hedges' entry of "anticipated" time is insufficient for a fee award.  Consequently, the Court will subtract the five hours from the plaintiff's request.  The Court does recognize that the plaintiff's counsel has expended additional time since the preparation of the original fee petition.  Therefore, the plaintiff may submit a supplemental motion for hours expended by counsel after the filing of the original petition. Additionally, Wells Fargo and Countrywide object to the hours expended by Mr. Hedges on claims that were dismissed by the Court; however, the Court has already held that it will not separate out the time spent on individual claims.  Finally, Wells Fargo and Countrywide object to the hours expended by Mr. Pomponio.  The defendants argue that Mr. Pomponio was not the lead attorney for the plaintiff and his involvement in the case was minimal.  The Court agrees with the defendants that Mr. Pomponio's involvement was limited.  Specifically, Mr. Pomponio's time sheets show that he expended 16.57 hours[3] over the course of this litigation compared to the approximately 150 hours

---

[3]This amount includes the 3.5 hours expended by Mr. Pomponio in relation to the hearing to enforce the settlement held by this Court on March 13, 2006.

-6-

expended by Mr. Hedges.  Though Mr. Pomponio's involvement with the plaintiff's case was limited, there is no indication that it was duplicative or unreasonable; therefore, the Court finds the hours expended by Mr. Pomponio to be reasonable.

After reviewing the defendants' objections and making reductions for duplicative and undocumented work, the Court finds that the hours expended by the plaintiff's counsel to be reasonable in relation to the results obtained and will not reduce the amount of hours expended further to account for the level of success obtained.  As the Court has noted, the plaintiff succeeded in obtaining a settlement on all but one of his original claims.  As part of that settlement, the plaintiff not only received $34,000 in cash but also succeeded at having the loan voided.  The Court finds these results to be significant.  Therefore, taking into account the reductions made by the Court, the plaintiff's fees and costs are as follows:

| | | |
|---|---|---|
| Costs and Expenses[4] | | $ 5,512.31 |
| Daniel F. Hedges[5] | 145.22 hrs at $300/hr | $43,566.00 |
| Bren J. Pomponio | 16.87 hrs at $225/hr | $ 3,795.75 |
| Paralegals | 40.95 hrs at $75/hr | $ 3,071.25 |
| **Total** | | **$55,945.31** |

**B.      Fee Enhancement**

The plaintiff has requested a fee enhancement for the results obtained in this case.  However, "[g]rants of enhancement are both discretionary and rare, and the applicant bears the burden of proof of an exceptional result." *Johannssen v. District No. 1–Pacific Coast District, MEBA Pension Plan*,

---

[4]The defendants do not object to the amount of costs and expenses

[5]Though the defendants do not object to the hourly rate charged by Mr. Hedges, Mr. Pomponio, or the paralegals, the Court notes that the plaintiff has supported the rate with affidavits from both Mr. Hedges and Mr. Pomponio as well as affidavits from local attorneys of comparable skill and experience.

292 F.3d 159, 181 (4th Cir. 2002) (citing *Blum v. Stenson*, 465 U.S. 886, 897-98 (1984)). "[T]he results obtained are initially factored into the lodestar calculation of a reasonable fee and hours expended under the test set out in *Johnson*,[6] and thus are not generally a sufficient basis for an enhancement unless 'exceptional.'" *Id.* (quoting *Blum*, 465 U.S. at 899-900).  Although the Court agrees that the results obtained by the plaintiff's counsel were significant, they do not rise to the level of exceptional.

## C.  Apportioning Attorney Fees Among the Defendants

At the time of settlement of the underlying claims, the issue of attorneys' fees was discussed and the parties agreed to mediate the issue of fees and costs at a later date.  In the alternative, the parties agreed that if the mediation was unsuccessful, they would litigate the issue of fees and costs.  According to the plaintiff, Wells Fargo and Countrywide, during the course of settlement discussions the plaintiff's counsel, forwarded via email to counsel for the defendants the terms of the settlement agreement.  Additionally, during a phone conversation on December 22, 2005, plaintiff's counsel, Mr. Hedges, read the language of the agreement to counsel for all the parties.  In regards to the payment of attorneys' fees and costs, the agreement provided, "Defendants will pay reasonable attorneys fees, costs, and expenses, the amount of which will be negotiated or fixed by the Court." *See* Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Attorney Fees and Costs, Exhibit A.  According to Mr. Hedges, only after counsel for all of the defendants agreed to the terms

---

[6]The *Johnson* test consists of the twelve factors discussed in section III, part A., *supra*. This test was created in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-719 (5th Cir. 1974).

and agreed to fax the plaintiff's counsel a signed copy of the stipulation of settlement, did the plaintiff's counsel agree that the case was fully settled.

However, counsel for the Tri-State Defendants never forwarded a signed copy of the agreement to the plaintiff.  Instead, after receiving a copy of the language contained in the settlement terms the plaintiff forwarded, the Tri-State Defendants altered the language regarding attorneys' fees to state that they agree to mediate and/or litigate the issue of fees.  Counsel for the Tri-State Defendants then forwarded a signed copy of the altered agreement to counsel for Countrywide and Wells Fargo.  The Tri-State Defendants contend that not only did they not agree to pay attorneys' fees and costs but that they are not responsible for the payment of any fees under the WVCCPA because they are not lenders.  In contrast, Defendants Countrywide and Wells Fargo maintain the Tri-State Defendants agreed to pay 50% of the fees and costs and the only issue to be determined by mediation was the total amount of reasonable fees and costs.

The Court believes that there is sufficient evidence that the Tri-State Defendants agreed during the course of settlement discussions to pay a reasonable amount of attorneys' fees and costs. All the parties agree that the payment of attorneys' fees was a central issue throughout mediation. From the onset of discussions, the plaintiff's counsel insisted that the issue of fees be dealt with after the parties reached a settlement on the underlying claims as to avoid a possible conflict of interest. The parties agreed with this approach and continued to mediate the issue of liability with Magistrate Judge Stanley.  However, upon reaching a potential settlement of the underlying claims, as evidenced by the affidavit of Mr. Hedges, the plaintiff would not agree to represent to the Court that the case was settled without an agreement from the defendants that they would "pay reasonable attorneys fees, costs, and expenses, the amount of which will be negotiated or fixed by the Court."

Counsel for Wells Fargo and Countrywide supports Mr. Hedges' account.  Therefore, the Tri-State Defendants agreed to the plaintiff's terms at the time of settlement and are responsible for a portion of the plaintiff's attorneys' fees and costs.

Even if the Court were to find that the Tri-State Defendants at the time of settlement simply agreed to mediate and/or litigate the issue of attorneys' fees and costs, they would not be exempt from contributing to the fees and costs incurred by the plaintiff.  At the time of settlement, the claim that remained against the Tri-State Defendants[7] (for which an award of fees is available)[8], was a claim for unconscionable contract pursuant to the WVCCPA.  *See* W.Va. Code § 46A-2-121.  The Tri-State Defendants argue that the WVCCPA imposes "civil liability on creditors who include unconscionable terms in consumer agreements for both acutal damages and possible penalties" and because the Tri-State Defendants were not parties to the subject loan, they cannot be subject to the fee-shifting provisions of the WVCCPA.  *See* Defendants TriState Title and Bonnie Fleming's Response to Plaintiff's Motion for Expenses and Attorneys' Fees at 2.  The Tri-State Defendants have attempted to escape liability under the WVCCPA throughout the course of this litigation.  The Court, in decisions on two motion to dismiss and a motion for summary judgment, found that the defendants were agents of the lender and could be held liable for the lender's actions.  Having

---

[7]The Tri-State Defendants contend that the charges against Legg were dismissed on summary judgment and that he is no longer a party to this action.  At summary judgment, the Court dismissed the claims against Legg for joint venture, conspiracy, and agency and unauthorized practice of law; however, the plaintiff's claim against Legg for unconscionable contract remained.

[8]At the time of settlement, the plaintiff's claim against Fleming for professional malpractice remained; however, an award of fees and costs are unavailable.

-10-

previously denied dismissal on the same grounds set for by the Tri-State Defendants in their response to the motion for fees, the Court reaffirms its previous rulings.

The Court is left to determine how the fee award will be apportioned between the defendants. Countrywide and Wells Fargo contend that the Tri-State Defendants agreed to split the fee award; however, there is no evidence beyond the representation of counsel for Countrywide and Wells Fargo of that agreement.[9]  Therefore, the Court will not consider the agreement when determining how to apportion the fees.

When multiple defendants exist, as in this case, a court must decide how to apportion the fees between the defendants.  There does not appear to be a standard procedure in determining how to allocate the award among defendants.   Some courts simply divide the fees equally among defendants.  *See Wilson v. Stocker*, 819 F.2d 943, 950-52 (10th Cir. 1987); *Vulcan Society of Westchester Country, Inc. v. Fire Department of White Plains*, 533 F.Supp. 1054, 1064 (S.D.N.Y. 1982).  Courts have also apportioned the fees based upon each defendant's percentage of culpability. *See Grendel's Den v. Larkin*, 749 F.2d 945, 959 (1st Cir. 1984); *see also Jose P. v. Ambach*, 669 F.2d 865, 871 (2d Cir. 1982); *Berry v. School District of the City of Benton*, 703 F.Supp. 1277, 1286 (W.D. Mich. 1986).  Specifically, the court in *Grendel's Den* looked to the nature of the injury, whether the injury was singular in nature, who caused the injury, the relative time spent by the plaintiff litigating the claims against the respective defendants, and the least important of all the

---

[9]Defendants Wells Fargo and Countrywide also contend that time expended by the plaintiff's counsel, Mr. Pomponio, in relation to the hearing to enforce the settlement on March 13, 2006, should be borne by the Tri-State Defendants.  The hearing held by the Court was a result of the inability of all of the defendants to carry out the agreed to settlement and reach an agreement regarding attorneys' fees.  The Court required each defendant to be present, therefore, the fees incurred by the plaintiff in relation to that hearing are appropriately divided among all of the defendants.

-11-

factors, the ability of the defendants to pay. *Id.* at 959-960.  It is important to note that regardless of the method employed, they only lead to approximation of the best apportionment of fees. *Council for Periodical Distributors Associations v. Evans*, 827 F.2d 1483, 1488 (11th Cir. 1987). "Nevertheless, in apportioning attorney's fees, 'district courts should make every effort to achieve the most fair and sensible solution that is possible.'" *Id.* (quoting *Grendel's Den*, 749 F.2d at 960).

There are three main defendants in this case, Countrywide, Wells Fargo, and the Tri-State Defendants.  Each defendant had a specific role in the evolution of the plaintiff's claims; however, their conduct together resulted in the injury suffered by the plaintiff.  In deciding whether a reduction for hours spent on unsuccessful claims would be proper, the Court found that the plaintiff's claims arose out of a common core of facts and that separating the time spent on each discrete claim would be too difficult.  The same reasoning holds true in apportioning the fees among the defendants.  The plaintiff's claims against the defendants were interrelated; therefore, the time spent by plaintiff's counsel in pursuing the claims against the three groups of defendants is relatively equal.  Therefore, given the relative culpability of the defendants, the injury to the plaintiff, and the interrelatedness of the claims, the Court finds the most fair and sensible apportionment of the fee award is to equally split the amount of the award among the three groups of defendants, Countrywide, Wells Fargo and the Tri-State Defendants.

## IV.
## CONCLUSION

The Court **GRANTS** the plaintiff's motion for award of fees and costs and the plaintiff's supplemental motion for fees [docket nos 107 and 124].  The Court **APPROVES** a fee in the amount of $55,945.31.  Wells Fargo, Countrywide, and the Tri-State Defendants are each **DIRECTED** to

pay one-third of the total amount of fees and expenses[10] to Mountain State Justice.  Additionally, because the Court excluded the anticipated time claimed by Mr. Hedges in his time sheets, the Court **DIRECTS** the plaintiff to file a supplemental motion for hours expended by counsel after the filing of the original petition within ten (10) days of the entry of this Order.

The Court **DIRECTS** the Clerk to send a copy of this written opinion to counsel of record and any unrepresented parties.

ENTER: June 8, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[10]The total amount of fees and costs is not equally divisible by three; therefore, the Court **ORDERS** the following amount due by each defendant:

Wells Fargo      $18,648.44
Countrywide    $18,648.44
Tri-State          $18,648.43